UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILFREDO DIAZ LANDAVERDE, <br><br> Petitioner, <br><br> v. <br><br> ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility; PATRICIA H. HYDE, Field Office Director; MICHAEL KROL, HSI New England Special Agent in Charge; TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement; and KRISTI NOEM, U.S. Secretary of Homeland Security <br><br> Respondents. | Civil Action No. 25-cv-12552-MJJ |

## MEMORANDUM OF DECISION AND ORDER

October 10, 2025

JOUN, D.J.

Wilfredo Diaz Landaverde ("Mr. Diaz Landaverde" or "Petitioner") petitions the Court under 28 U.S.C. § 2241 and the Due Process Clause of the Fifth Amendment for relief from detention at the Plymouth County Correctional Facility.

**I.   BACKGROUND**

Mr. Diaz Landaverde is a 24-year-old citizen of El Salvador and resident of Everett, Massachusetts. [Doc No. 10-1 at ¶ 6; Doc. No. 12 at ¶ 1]. On or about May 4, 2019, a U.S. Border Patrol ("USBP") agent encountered Mr. Diaz Landaverde at or near Hidalgo, Texas. [Doc. No. 10-1 at ¶ 7]. The USBP agent determined that Mr. Diaz Landaverde arrived in the U.S. without inspection and subsequently arrested him. [*Id*.]. On or about May 7, 2019, Mr. Diaz

1

Landaverde was served with a Notice and Order of Expedited Removal and on or about June 1, 2019, Mr. Diaz Landaverde received a credible fear interview. [*Id*. at ¶ 8–9]. The asylum officer found that Mr. Diaz Landaverde had demonstrated a credible fear of persecution or torture. [Doc. No. 15 at 7]. On or about June 18, 2019, Mr. Diaz Landaverde was served a Notice to Appear pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I). [Doc. No. 10-1 at ¶ 10; Doc. No. 12 at ¶ 2; Doc. No. 15 at 7–8]. Mr. Diaz Landaverde was released on his own recognizance under 8 U.S.C. § 1226. [Doc. No. 15 at 10]. The Order of Release on Recognizance stated Mr. Diaz Landaverde was "arrested and placed in removal proceedings. In accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance provided you comply with the following conditions . . . ." [*Id*.]. Mr. Diaz Landaverde was placed in removal proceedings with the Immigration Court but was not detained during proceedings. [Doc. No. 10-1 at ¶ 11; Doc. No. 12 at ¶ 3; Doc. No. 15 at 7, 10].

On or about September 8, 2022, USCIS approved Mr. Diaz Landaverde's Form I-360 Petition for Amerasian, Widower, or Special Immigrant ("Form I-360 Petition"), based on a classification as a Special Immigrant Juvenile ("SIJ"), with Deferred Action. [Doc No. 10-1 at ¶ 12; Doc. No. 12 at ¶ 4; Doc. No. 15 at 12]. On July 7, 2023, Mr. Diaz Landaverde's removal proceedings were terminated by the Boston Immigration Court based on his granted classification of SIJ, pursuant to *Matter of Coronado Acevedo*, 28 I. & N. Dec. 648 (A.G. 2022). [Doc. No. 10-1 at ¶ 13, Doc. No. 12 at ¶ 5; Doc. No. 15 at 14].

On or about September 2, 2025, Mr. Diaz Landaverde was convicted of Simple Assault and Disorderly Conduct in Rockingham, New Hampshire. [Doc. No. 10-1 at ¶ 18]. On or about September 5, 2025, Immigration and Customs Enforcement ("ICE") issued a warrant for the

arrest of Mr. Diaz Landaverde.[1] [*Id*. at ¶ 14]. On or about September 8, 2025, USCIS terminated Mr. Diaz Landaverde's deferred action associated with his Form I-360 Petition, though his Form I-360 Petition remains approved. [*Id*. at ¶¶ 12, 15]. On or about September 11, 2025, Mr. Diaz Landaverde was encountered at or near Brentwood, New Hampshire, arrested, served with the previously issued warrant for arrest, and taken into ICE custody. [*Id*. at ¶ 16; Doc. No. 12 at ¶ 6]. On the same day, the Petitioner was served in person with a Notice to Appear, charging him with inadmissibility pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I). [Doc. No. 10-1 at ¶ 16; Doc. No. 12 at ¶ 7; Doc. No. 15 at 18–19]. Mr. Diaz Landaverde has since been transferred to the Plymouth County Correctional Facility where he is being held. [Doc. No. 10-1 at ¶ 16, Doc. No. 12 at ¶ 6].

On or about September 16, 2025, the Notice to Appear was filed with the Chelmsford Immigration Court, initiating removal proceedings against the Petitioner. [Doc. No. 10-1 at ¶ 17]. The latest immigration hearing was scheduled for September 22, 2025, at the Chelmsford Immigration Court. [*Id*.].

**II.   ANALYSIS**

   **A. Detention**

It is not necessary for me to repeat the analysis done by Judge Kobick in *Gomes v. Hyde*, No. 25-cv-11571, 2025 WL 1869299, at *5–7 (D. Mass. July 7, 2025). I agree "that the plain text of Sections 1225 and 1226, together with the structure of the larger statutory scheme, indicates that Section 1225(b)(2) does not apply to noncitizens who are arrested on a warrant issued by the Attorney General while residing in the United States." *Id*. at *7. Here, Mr. Diaz Landaverde was

---

[1] The warrant is to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." [Doc. No. 15 at 16].

3

released on an Order of Recognizance pursuant to Section 1226(a). More than a year later, while residing in the United States, Mr. Diaz Landaverde was arrested on a warrant issued under 8 U.S.C. § 1226(a). These facts make clear that Mr. Diaz Landaverde is not subject to Section 1225(b)(2)(A). Rather, he is subject to Section 1226(a)'s discretionary detention framework and is thus eligible for bond.

### A. SIJ Classification

Respondents also argue that classification as an SIJ does not provide any lawful status, prohibit detention, nor bar effectuation of a removal order. Before addressing this argument, I provide background of the SIJ classification.

An SIJ is "an immigrant who is present in the United States" and:

> (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;
>
> (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and
>
> (iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status ....

8 U.S.C. § 1101(a)(27)(J). "The protections afforded to children with SIJ status include an array of statutory and regulatory rights and safeguards, such as eligibility for application of adjustment of status to that of lawful permanent residents ("LPR"), exemption from various grounds of in admissibility, and robust procedural protections to ensure their status is not revoked without good cause." *Juarez Morales v. Noem*, No. 24-cv-12518, 2025 WL 1923096, at *3 (D. Mass. June 24, 2025). Furthermore,

> [f]or purposes of 8 U.S.C. § 1255(a), which describes adjustment of status, SIJ designees are "deemed ... to have been paroled into the United States." 8 U.S.C. § 1255(h)(1). Moreover, the INA automatically exempts SIJ designees from a set of generally applicable grounds of inadmissibility and provides that other grounds of inadmissibility also may be waived at the Attorney General's discretion. 8 U.S.C. §§ 1255(h)(2), 1182(a) . . . Additionally, Congress has granted SIJ designees various forms of support within the United States, such as access to federally funded educational programming and preferential status when seeking employment-based visas. *See id.* §§ 1232(d)(4)(A), 1153(b)(4).

*Osorio-Martinez v. Att'y Gen. United States of Am.*, 893 F.3d 153, 163–64 (3d Cir. 2018).

With regard to deferred action,

> "[d]ue to ongoing visa number unavailability, the protection that Congress intended to afford SIJs through adjustment of status is often delayed for years[.]" USCIS, Policy Alert PA-2022-10 (Mar. 7, 2022), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20220307-SIJAndDeferredAction.pdf. In light of this delay, USCIS's policy had been to consider granting deferred action on a case-by-case basis to SIJs who are ineligible to obtain adjustment of status solely due to unavailable immigrant visa numbers. *Id*. Recently, that policy changed, and currently "USCIS will no longer consider granting deferred action on a case-by-case basis to aliens classified as SIJs who are ineligible to apply for adjustment of status solely due to unavailable immigrant visas." USCIS, Policy Alert PA-2025-07 (June 6, 2025), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20250606-SIJDeferredAction.pdf. But despite the policy change, "aliens with current deferred action based on their SIJ classification will generally retain this deferred action, as well as retain their current employment authorization provided based on this deferred action, until the current validity periods expire". *Id*.
>
> . . .
>
> USCIS reserves the right to terminate grants of deferred action to SIJs "as a matter of discretion." USCIS, Policy Manual, vol. 6, pt. J., ch. 4 ¶ G.2. Examples of such discretion include where the petition for SIJ classification was approved in error and the petition is revoked, or where the prior deferred action and related employment authorization were granted in error. *Id.*

*Primero v. Mattivelo*, No. 25-cv-11442, 2025 WL 1899115 at *2 (D. Mass. July 9, 2025).

Although USCIS has discretion and did terminate Mr. Diaz Landaverde's deferred action associated with his Form I-360 Petition, it is undisputed that Mr. Diaz Landaverde's I-360 petition was approved on September 8, 2022, with a grant of deferred action for four years. It is

5

also undisputed that Mr. Diaz Landaverde's Form I-360 remains approved. Thus, on September 8, 2022, Mr. Diaz Landaverde was deemed to have been paroled into the United States. *See* 8 U.S.C. § 1255(h)(1). These facts further affirm that Mr. Diaz Landaverde is subject to Section 1226(a)'s discretionary detention framework and is thus eligible for bond.

### III. CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas is <u>GRANTED</u>. Respondents are <u>ORDERED</u> to provide Mr. Diaz Landaverde with a bond hearing under 8 U.S.C. § 1226(a) within 10 days of this Order. The Respondents are <u>ENJOINED</u> from denying bond to Mr. Diaz Landaverde on the basis that he is detained pursuant to 8 U.S.C. § 1225(b)(2). The Respondents are further <u>ORDERED</u> to file a status report within 24 hours of the bond hearing, stating whether Mr. Diaz Landaverde has been granted bond, and, if his request for bond was denied, the reasons for that denial.

SO ORDERED.

<u>/s/ Myong J. Joun</u><br>
United States District Judge